UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ANDRE HAMILTON

       Plaintiff,

                                      Case No. 05-CV-71035

v.

TIMOTHY LUOMA,

       Defendant.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Andre Hamilton, ("Petitioner"), presently incarcerated pursuant to his state criminal convictions for one count of first-degree murder,[1] and one count of felony firearm possession,[2] seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's application is presented through counsel. For the reasons stated below, the petition for writ of habeas corpus will be denied.

## I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. The court recites verbatim the relevant facts regarding Petitioner's conviction from the opinion of the Michigan Court of Appeals affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197

---

[1] Mich. Comp. Laws § 750.316.

[2] Mich. Comp. Laws § 750.227b.

F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> The evidence at trial established that May 21, 1999, was "senior skip day" and many young people went to Belle Isle in Detroit, Michigan. Tamika Franklin was on the island that day with friends, when Jimmy Lloyd squirted her with a water gun. They began arguing and pushed each other. Seeing this, Tamika's brother, Dale Franklin, and her cousin, Devon Franklin, approached them. Devon got involved in the argument, and a physical fight ensued between Lloyd and Devon. Karnail Pitts, a friend of Devon, joined the fight and they both were punching Lloyd.
>
> During the fight, defendant was sitting in the driver's seat of the red Ford Explorer that he and his friends had driven to Belle Isle. Defendant had a nine-millimeter rifle that he carried with him when he was picked up from his home earlier that day and that he loaded on the way to Belle Isle. After noticing the fight, defendant stepped out of the vehicle and stood at the driver's side for a short period of time watching the fight. Defendant then walked to the back of the Explorer, opened the hatch, and removed the loaded nine-millimeter rifle. Defendant approached the side of the vehicle with the gun, aimed the rifle, and shot at least two shots. As this happened, the fight was still occurring; however, Pitts was getting up from the fight and was in the process of turning around to walk away from the fight. As Pitts jerked and then fell to the ground in front of the Explorer, defendant jumped back into the driver's side and pulled away at a high rate of speed, running over Pitts. The police were in pursuit of the Explorer when it slammed into a tree, and finally came to an abrupt stop. When apprehended by the police, defendant was in the back seat of the Explorer, the passenger door was open, and he was attempting to retrieve and conceal an object. Pitts was pronounced dead later of two gunshot wounds to the back. Pitts also had multiple abrasions on his forehead and hemorrhage in the scalp consistent with being run over by a car.

*People v. Hamilton,* No. 224954, * 2 (Mich. Ct. App. January 22, 2002). The Michigan Court of Appeals affirmed Petitioner's conviction but remanded the case to the trial court for an evidentiary hearing on Petitioner's *res gestae* witness and ineffective assistance of counsel claims. *Id., lv den* 672 N.W.2d 857 (Mich. 2002).

The trial court subsequently denied Petitioner's motion for a new trial on March 21, 2002. Petitioner's conviction was again affirmed. *People v. Hamilton,* No. 240480 (Mich. Ct .App. October 21, 2003), *lv den* 680 N.W.2d 417 (Mich. 2004).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. Petitioner alleges he was denied his constitutional right to present a defense and to the effective assistance of counsel under the federal constitution (U.S. Const. Amends. VI, XIV), when his attorney failed to present the testimony of a witness who would have provided substantial support for Petitioner's alternative defenses and called no other witnesses in support of those defenses.

II. Petitioner claims he was denied his right to a fair trial under the due process clause of the federal constitution (U.S. Const. Amends. V, XIV) when prosecution violated its duty to produce a *res gestae* witness whose testimony was critical to the defendant's defense.

III. Petitioner argues that he was denied his due process right under the federal constitution (U.S. Const. Amends. V, VI, XIV) to a jury determination of guilt beyond a reasonable doubt based on sufficient evidence, because the evidence of premeditation was insufficient to support the verdict of murder in the first degree.

## II. STANDARD OF REVIEW

The following standard of review applies to habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel

Petitioner first claims that trial counsel was ineffective in failing to call James Lloyd ("Jimmy") as a witness to bolster Petitioner's defense that he shot the victim to defend Lloyd from being attacked by the victim and his friends. Although other witnesses testified at trial concerning the altercation between Lloyd and several other men, Lloyd was the only person who would have testified that he was actually struck with a blunt object. Petitioner contends that Lloyd's testimony would have made the use of deadly force to be more justifiable than had he merely been attacked by the other men without objects being involved.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must normally satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other

words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.*

Under Michigan law, one acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6th Cir. 1999) (*citing People v. Heflin*, 456 N.W.2d 10 (Mich. 1990)). This right to act in self-defense also includes the right to defend another person. *Johnigan v. Elo,* 207 F.Supp.2d 599, 609 (E.D. Mich. 2002) (*citing People v. Curtis*, 18 N.W. 385, 387 (Mich. 1884); *People v. Wright*, 181 N.W.2d 649, 651 (Mich. Ct. App. 1970)). However, in killing another person in self-defense, a defendant is not entitled under Michigan law to use any more force than is necessary to defend himself. *See People v. Kemp,* 508 N.W.2d 184, 187 (Mich. Ct. App. 1993). The doctrine of "imperfect" self-defense, which would reduce a murder charge to manslaughter, is likewise unavailable if the defendant responds to the victim's aggression with excessive force. *Id.* at 188.

As the Michigan Court of Appeals noted in rejecting this claim, Petitioner shot the victim twice in the back and then drove over his head with his vehicle. The situation Petitioner faced did not call for such a violent and extreme response. Because Petitioner used more force than necessary to defend Lloyd, the Michigan Court of Appeals concluded that it was not reasonably probable that a jury would have reached a different verdict had Lloyd testified to being hit with a blunt object. The Michigan Court of Appeals further noted that because the jury viewed the videotape of

5

the beating and heard the testimony of several eyewitnesses, the jury was not prevented from considering the substance of Lloyd's testimony concerning the beating. *People v. Hamilton,* No. 240480, Slip. Op. at * 4.

Because Petitioner's "defense of others" claim is undermined by the excessive force he used, Petitioner is unable to show prejudicial error on the part of counsel for failing to present evidence to bolster his claim that he acted in defense of another. *See Winters v. Miller*, 274 F. 3d 1161, 1166-67 (7th Cir. 2001). In any event, because Lloyd's testimony would have been cumulative of other corroborating evidence in support of Petitioner's defense of others claim, the decision of the Michigan Court of Appeals that Petitioner had not been deprived of the effective assistance of counsel was not contrary to, or an unreasonable application of, clearly established federal law. *See e.g. Yi v. Gearinger,* 139 F.Supp.2d 1393, 1413-14 (N.D. Ga. 2001). Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.

### B.  The *Res Gestae* Witness

As a related claim, Petitioner contends that he was deprived of a fair trial because the prosecution failed to call James Lloyd as a *res gestae* witness. Federal law does not require the production of *res gestae* witnesses in a state court criminal trial. *See Johnson v. Hofbauer,* 159 F.Supp.2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Id. (quoting Atkins v. Foltz*, 856 F.2d 192, 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)).

The Due Process Clause requires the state to disclose exculpatory evidence to

the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Therefore, in order to establish a *Brady* claim, Petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir.2000). Petitioner bears the burden of establishing each of these three elements. *Id*. "If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus, and 'there is no need for further harmless-error review.'" *Aldrich v. Bock,* 327 F.Supp.2d 743, 755 (E.D. Mich. 2004) (citing *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "[I]f, on the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation." *Id.*

The standard of prejudice for an ineffective assistance of counsel claim is the same as the materiality requirement for a *Brady* claim. *See Hutchison v. Bell,* 303 F. 3d 720, 749 (6th Cir. 2002). In light of the fact that the court already determined that Petitioner was not prejudiced by trial counsel's failure to call James Lloyd to bolster his "defense of others" claim, the court likewise concludes that Lloyd's testimony would not have been material to this defense. Petitioner therefore does not have a viable *Brady* claim. His second claim is without merit.

### C. Sufficiency of the Evidence

Petitioner lastly contends that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree murder. The court disagrees. A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D. Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F.Supp. 2d 974, 985 (E.D. Mich. 2002) (internal citations omitted).

To prove first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002) (*citing People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *Johnson,* 159 F. Supp.2d at 596) (*citing People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995)). Premeditation may be established through evidence of the following factors:

    1. the prior relationship of the parties;
    2. the defendant's actions before the killing;
    3. the circumstances of the killing itself;

    4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 531 N.W.2d at 786.

    Under Michigan law, the interval between the thought and action should be long enough to give a reasonable person sufficient time to subject his or her actions to a "second look" in order to prove premeditation and deliberation.  *Alder v. Burt,* 240 F.Supp.2d 651, 663 (E.D. Mich. 2003) (*citing People v. Morrin,* 187 N.W.2d 434 (Mich. Ct. App. 1971)).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation."  *Id.*  Therefore, a sufficient time lapse to provide an opportunity for a "second look" may require mere seconds, or it may consume minutes, hours or more. All of this is dependant on the totality of the circumstances surrounding the killing.  *People v. Berthiaume*, 229 N.W.2d 497, 500 (Mich. Ct. App.1975).  Further, premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *People v. Berry*, 497 N. W. 2d 202, 204 (Mich. Ct. App. 1993).

    There was sufficient evidence of premeditation and deliberation in this case. First, that Petitioner shot the victim in the back while the victim was walking in the other direction can itself constitute evidence of premeditation.  *See e.g. Young v. Withrow,* 39 Fed.Appx. 60, 62 (6th Cir. 2002) (victim intentionally shot in back while fleeing sufficient evidence of premeditated murder).

    Second, it is clear that Petitioner not once, but several times had the opportunity to take the necessary "second look."  These opportunities include the following: 1) after he had noticed the fight, stepped out of his vehicle and stood there watching it, 2)

9

before he decided to walk to the back of his vehicle, 3) before he opened the vehicle's hatch, 4) before he removed the rifle, 5) before he walked back to the driver's side of the vehicle, 6) before he aimed the rifle and 7) before he discharged either of the two – or more – shots that he fired.

Also, after the victim had been shot and had fallen, helpless, on the ground, Petitioner had yet more time for a "second look" when he got back into his vehicle, started it, put it in gear and drove over the victim, an act that under the circumstances can only be interpreted as intentional, and which obviously carries with it a high potential for fatal consequences. The fact that Petitioner drove over the victim with his truck is, therefore, further evidence of Petitioner's premeditation and deliberation. *See e.g. State v. Bryan,* 990 S.W.2d 231, 241 (Tenn. Crim. App. 1998).

In addition, Petitioner attempted to flee from the police. This can support an inference of premeditation and deliberation. *See Marsack v. Howes,* 300 F.Supp.2d 483, 491-92 (E.D. Mich. 2004). Finally, before Petitioner proceeded to the island – indeed, before he even left his home – he had prepared himself for some kind of deadly action by arming himself with a high-power rifle, and loading it. These actions are further suggestive of premeditation. *People v. Wallace* 2003 WL 22718198, *2 (Mich. Ct. App. 2003) (sustaining trial court's finding that "deliberation and premeditation may well have begun when the weapon was removed from the grandmother's home some two weeks . . . prior to the killing").

To the extent that Petitioner is attacking the credibility of the witnesses to claim that the evidence is legally insufficient, he is not entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence,

and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002) (internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*

The court concludes that the evidence presented at trial was sufficient for a rational trier of fact to conclude that Petitioner committed the offense of first-degree premeditated murder. Because the Michigan Court of Appeals accurately summarized the facts in this case and made a reasoned decision in applying the 'no rational trier of fact' standard, the state court's decision was neither contrary to, nor an unreasonable application of existing federal law as determined by the U.S. Supreme Court. *Welch v. Burke*, 49 F.Supp.2d 992, 1000 (E.D. Mich. 1999). Petitioner is not entitled to habeas relief on his claim on insufficient evidence.

## IV.  CONCLUSION

IT IS ORDERED that the Petitioner's March 16, 2005 "Petition for Writ of Habeas Corpus" [Court Docket Entry # 1] is DENIED.


    S/Robert H. Cleland

ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 31, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2006, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\05-71035.HAMILTON.DenyHabeas.DHB.2.wpd